Render *v.* Federation Credit Union Local No. 89, Appellant.

Argued January 18, 1963. Before BELL, C. J., MUS-MANNO, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

ment refused August 6, 1963.

Stanley M. Greenberg, with him Edwin E. Nay-thons, Leonard M. Sagot, and Ochman & Greenberg, for appellants.

Edward Davis, for appellees.

Frederic G. Antoun, Deputy Attorney General, and David Stahl, Attorney General, for Secretary of Banking, Commonwealth of Pennsylvania, amicus curiae.

Floyd W. Tompkins, with him James A. Peace, and Tompkins & Peace, for Pennsylvania Credit Union League, under Rule 65.

OPINION BY MR. JUSTICE COHEN, June 4, 1963:

In this action the chancellor, as a member of the court en banc, joined in sustaining exceptions to his adjudication. The decree of the court en banc restrained officers and members of a credit union from violating the statute under which the credit union was chartered and the Letters Patent chartering the credit union.

Decree affirmed, at appellants' costs.

---

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

I disagree with the majority's affirmance of a result which inequitably deprives over 1500 persons of their status and property rights in a voluntary association while granting preferential treatment to the interests of only 48.

In 1934, members of Local No. 89, National Federation of Post Office Clerks [Local 89] incorporated a credit union [Credit Union] pursuant to the Act of May 26, 1933, P. L. 1076, 14 P.S. §§201-226 (1958) [Act],[1] which provides in Section 4 (14 P.S. §204) : "Credit union membership shall consist of the incorporators and such other persons as may be elected from time to time to membership and . . . shall be *limited to groups* of both large and small membership *having a common bond of association by reason of occupation . . . .*" (Em-

---

[1] The Act has since been replaced by the Credit Union Act, September 20, 1961, P. L. 1548, 14 P.S. §§230-1 to 230-33 (Supp. 1961). However, there were no changes which would materially affect the determination of the issues here involved.

phasis supplied.) The by-laws of the Credit Union limited membership "to the members in good standing of Local Union No. 89 . . .,"[2] and provided that "a member who leaves the sphere of operation of the corporation [here the U. S. Post Office] may retain his shares of stock . . ." in the Credit Union.[3]

In 1958, an overwhelming majority of Local 89 left that labor union and formed a new union, the Philadelphia Post Office Clerks Union [Clerks Union]. Of approximately 1550 members of the Credit Union, more than 1500 left Local 89 to join the Clerks Union. On the same day as the withdrawal from Local 89, at a special meeting, the majority of a quorum of the Credit Union voted to amend its by-laws to limit membership in the Credit Union to members of the Clerks Union. These amendments, required to be approved by the Department of Banking before becoming effective, §2 (14 P.S. §202E), were denied approval by the Department because they would exclude from the Credit Union those members still in Local 89.

Plaintiffs, representing the 48 members of the Credit Union who remained in Local 89, brought this representative suit against the Credit Union and its officers, who had disaffiliated from Local 89. Prior to the entry of the decree nisi, after consultation with the Department of Banking, the members of the Credit Union (including the 1500) adopted amendments which would make the members of both labor unions eligible for membership in the Credit Union. (These amendments were approved by the Department of Banking subsequent to the chancellor's disposition of the case.)

In an extremely well-reasoned adjudication, the chancellor denied plaintiffs the relief sought by them and found, inter alia:

---

[2] Article II, §1.
[3] Article II, §6.

"The individual defendants have not been guilty of any improper conduct.

"None of the property of the Credit Union has been wasted, diverted, or improperly transferred."

"No vote or other action was taken at any meeting of the Credit Union to expel the defendants or the other Credit Union members who are also members of the Clerks Union."

"Article II, Section 1 relates to initial admission to membership in the Credit Union and does not operate so as to dismiss automatically from membership members of the Credit Union who lose their status as members in good standing of Local 89.

"No member entitled thereto has been denied any of his lawful rights in defendant Credit Union, nor has the conduct of the officers or the membership of the Credit Union, caused or threatened any loss to the Credit Union or the members thereof." However, the court en banc sustained plaintiffs' exceptions and decreed that since appellants were not members of Local 89, they were not, therefore, members of the Credit Union, and that the amendments to the by-laws were not properly enacted.

I cannot agree with the conclusion of the court en banc and of the majority of this Court that the 1500 members of the Credit Union who terminated their membership in Local 89 thereby automatically lost their membership and rights in the Credit Union. The ruling of the court en banc, and of the majority here, fails to give effect to Section 18 of the Act (14 P.S. §218) which specifically provides: *"A member may be expelled by a two-thirds' vote* of the members present at a regular or a special meeting called to consider the matter, *but only after a hearing after due notice to the member* of the time and place of the meeting and of the reason or reasons for such proposed expulsion." (Emphasis supplied.) Not one step of this mandated

procedure was followed. Further, there is no provision in the by-laws of the Credit Union which authorizes the *automatic* expulsion of a member.. The requirement of membership in good standing of Local 89 found in Article II, §1 of the by-laws is a requirement for eligibility upon election to membership, not disqualification or expulsion. Moreover, Article II, §6 refutes the contention that expulsion was automatic since that section permits a member to retain his membership in the Credit Union even if he leaves the sphere of operation of his employer, which would, in all likelihood, result in his leaving Local 89.

In its brief as amicus curiae, the Department of Banking explained that the first amendments were disapproved because the result would have been to expel 48 members and to deprive them of Credit Union benefits for failure to disassociate from Local 89. The approved amendments would eliminate this result.

The decree of the court en banc, in my opinion, erroneously concluded that the purpose of the defendants was to deprive the plaintiffs of their property rights without due process of law. But that decree, now with the support of the majority of this Court, will even more severely deprive over 1500 persons of their property rights. The view of the majority permits 48 members to penalize, without justification or authority, over 1500 fellow employees who left Local 89. Such a harsh result is unsound and unnecessary, and it may not be justified on the mere technicality that had the 1500 adopted the amendments prior to disaffiliation, their property rights in the Credit Union would have been preserved.

I am unable to understand why the action of over 1500 members which protects not only their property rights in the Credit Union but also those of the other 48 members is not as satisfactory to the majority as it was to the Department of Banking and to the chan-

cellor. I would, therefore, reverse the decree and make the decree nisi absolute.

Mr. Chief Justice BELL joins in this dissent.

reargument refused August 6, 1963.